DICKINSON CO., INC., Appellant,

v.

IOWA STATE DEPARTMENT OF TRANSPORTATION, Appellee.

No. 64374.

Supreme Court of Iowa.

Jan. 14, 1981.

Garold F. Heslinga, Oskaloosa, for appellant.

Lester A. Paff and Craig Gregersen, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and LARSON, JJ.

HARRIS, Justice.

Plaintiff, an electrical contractor, agreed to a "no-damage" clause in a contract with the defendant Iowa department of transportation (the department). There were extensive delays in the project which for two years prevented plaintiff from performing. Notwithstanding the contractual no-damage provision, plaintiff brought this suit on the theory that the delays here were not of the kind contemplated by the parties when they made the contract. We think plaintiff failed to make out a jury question on this theory and, hence, affirm the trial court for directing a verdict in favor of the department.

The contract to install the lighting and traffic signs for a new interstate highway called for 50 working days and a completion date of October 1, 1974. There were detailed job plans in the contract, as well as the 1972 standard specifications. A number of specifications dealt with contemplated delay. Some of them provided:

1108.07 EXTENSION OF CONTRACT PERIOD. Should a delay become apparent before the work is started, the engineer will immediately notify the contractor by letter that work on his contract will be delayed, the approximate duration of such delay, and that his contract completion date will be correspondingly extended.

.    .    .    .    .

1109.05 CANCELLED WORK. When unforeseen circumstances or unanticipated design changes prevent or unreasonably delay the completion of the contract, or of certain items included therein, the contracting authority shall have the right to cancel any or all such items from the contract.

The contractor may be prevented from starting work on a contract as a result of a delay caused by the contracting authority or others.

When the contract period is defined by approximate starting date and the delay prevents the contractor's starting for 30 days beyond such date, the contractor may request cancellation.

.    .    .    .    .

1109.11 DISPUTED CLAIMS FOR EXTRA COMPENSATION.

.    .    .    .    .

The contracting authority shall be responsible for damages attributable to the performance, nonperformance, or delay, of any other contractor, governmental agency, utility, firm, corporation, or individual authorized to do work on the project, only when such damages result from negligence on the part of the contracting authority, its engineer, or any of

its officers or employees. In any case where the contractor deems that extra compensation is due him from the contracting authority as damages resulting from such performances, nonperformances, or delays, the contractor shall notify the engineer in writing at the time the delay occurs.

The department at no time notified plaintiff of the delay as provided by specification 1108.07. Plaintiff realized by the end of July 1974 that, because of construction delays, it was not going to be able to get on the job. Again in 1975 there was a further delay and again defendant did not notify plaintiff prior to the end of the work season.

Plaintiff's evidence that this delay was not of a kind contemplated by the parties went only to the extent and length of the delay. There was no evidence here of what caused the delay. We have only plaintiff's testimony that the delay here was extreme and its length was unexpected.

The contract also provided that, where there were delays caused by the contracting authority or others, the plaintiff was ultimately given the option to cancel the contract. Upon such cancellation plaintiff would have been paid for the materials ordered for the job and certain other expenses, but no anticipated profits.

Plaintiff did take advantage of another provision in the contract. After delay, such as was experienced here, the contractor could remain on the job and negotiate for payment of extra items resulting from the delay. Again the privilege for negotiation did not extend to any anticipated profits. Nevertheless plaintiff, after completing the contract, negotiated for and received payment above the contract price for increased cost and for the handling of stored material.

Finally, in 1976, plaintiff was allowed on the project and performed. Thereafter plaintiff brought this suit for lost profits which it claims could have been realized during the 50 days in 1974 and 50 days in 1975. Plaintiff's theories at trial were (1) that defendant was negligent in not notifying plaintiff of the anticipated delays, and (2) that the delays were not of the type anticipated by a contract. At the close of all evidence the trial court directed a verdict for the defendant because of the no-damage provision. This appeal follows.

■ We have considered "no-damage" clauses in several cases, most recently in *Owen Const. Co., Inc. v. Iowa State Dept., Etc.*, 274 N.W.2d 304 (Iowa 1979), in which we recognized the general validity of such clauses but said there might be exceptions to their enforceability. We said, 274 N.W.2d at 307:

These exceptions include situations where the delay (1) was of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, (3) was caused by bad faith on the part of the contracting authority, or (4) was caused by active interference by such party. [Authorities.]

In *Owen* we found no evidence supporting any of the exceptions and therefore held a directed verdict should have been sustained in favor of the contracting authority.

Plaintiff here sought to come under only the first of the four *Owen* exceptions, that is, the delay was of a kind not contemplated by the parties. The existence of a no-damage clause is certainly indication that some delay was anticipated. The options given the plaintiff to cancel or to negotiate for the additional expenses are further evidence that some delay was contemplated by the parties. But none of the provisions amount to an indication that a delay of two years was anticipated. The plaintiff offered testimony of prior contracts with the department. According to plaintiff's evidence there had been delays in prior projects but the delays here were much more extensive and were beyond anything plaintiff anticipated when the contract was made.

■ The department argues that length of delay, even extreme length, cannot qualify as "kind" of delay under the first *Owen* exception. But we think it is apparent that, notwithstanding the no-damage provision in a construction contract, a delay may

be so extreme as to be a kind not contemplated.

The question then becomes whether plaintiff made out a jury question of the first *Owen* exception. We do not view the question as calling for either construction or interpretation of the contract. *See Fashion Fabrics of Iowa v. Retail Investors*, 266 N.W.2d 22, 25 (Iowa 1978). The question is simply whether plaintiff made a jury question on his claim that the delay here, because of its length, was not of the kind contemplated by the parties.

■ We agree with the trial court that the record cannot support such a claim. There was a mere showing that (1) some delay was to be expected, and (2) that on the basis of past dealings the plaintiff did not anticipate a two-year delay. There was no evidence that two-year delays were unknown or even that they were uncommon in highway construction. The record is not sufficient to show that the delay was not of a kind contemplated by the parties under the first *Owen* exception.

AFFIRMED.